# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 15-65V
Filed: August 7, 2017

```
* * * * * * * * * * * * * *
LEAH HAWKINS BENNETT, as          *        PUBLISHED
Personal Representative of the     *
Estate of VARNADORA MCNEAL         *
HAWKINS,                           *
                                   *
              Petitioner,          *        Decision on Attorneys' Fees and Costs
v.                                 *
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
              Respondent.          *
* * * * * * * * * * * * * *
```

*Alison H. Haskins, Esq.*, Maglio Christopher & Toale, PA, Sarasota, FL, for petitioner.
*Adriana R. Teitel, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On January 22, 2015, petitioner ("Ms. Bennett," or "petitioner") filed a petition for compensation as personal representative of her deceased mother, Varnadora McNeal Hawkins, under the National Vaccine Injury Compensation Program.[2] Petitioner alleged that Ms. Hawkins developed Guillain-Barre Syndrome ("GBS") as a result of receiving an influenza ("flu") vaccination on October 4, 2013, and died on July 11, 2014, as a result of GBS-related sequela. Petition ("Pet.") at 1-2, ECF No. 1. Respondent denied that the flu vaccine caused Ms. Hawkins'

---

[1] This decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided in 42 U.S.C § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. To do so, each party may, within 14 days, request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, this decision will be available to the public in its present form. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

alleged GBS or death.  Stipulation at ¶ 6, filed Sept. 12, 2016, ECF No. 42.  Nevertheless, the parties agreed to settle the case.  *See id*.  On September 13, 2016, the undersigned issued a Decision awarding compensation in the amount of $360,000.00 to petitioner based on the parties' stipulation.  Decision, ECF No. 43.

On March 7, 2017, petitioner filed a Motion for Attorneys' Fees and Costs.  Motion for Fees, ECF No. 48.  Petitioner requested attorneys' fees in the amount of $45,090.30, and $8,032.97 in costs, for a total amount of $53,123.27, for work performed by her attorney, Ms. Alison Haskins, Esq.  *Id*. at 2.  In addition, petitioner requested $12,311.11 in attorneys' fees and expenses for work performed by her estate counsel, Shutts & Bowen, LLC.  *Id*.  In accordance with General Order #9, petitioner's counsel represented that petitioner did not incur any personal costs in this case.  Pet. Ex. 23, ECF No. 48-4.

On March 24, 2017, respondent filed a response to petitioner's Motion for Fees. Response, ECF No. 49.  Respondent provided no specific objection to the amount requested or hours worked, but instead "respectfully recommend[ed] that the special master exercise her discretion and determine reasonable award for attorneys' fees and costs." *Id*. at 3.  On March 28, 2017, petitioner filed a reply, asserting that respondent provided no precise objection and that she has met her burden of establishing reasonable fees and costs.  Pet. Reply at 2-4, ECF No. 50.

Following review of petitioner's Motion for Fees, the undersigned issued an Order on May 30, 2017, noting that the Vaccine Act "does not provide attorney fee awards to cover the myriad legal implications of establishing or administering an estate." *Siegfried v. Sec'y of Health & Human Servs*., 19 Cl. Ct. 323, 325 (1990).  The undersigned also noted that fees related to probate proceedings have been distinguished from fees related to establishing a guardianship.  *See Haber ex rel. Haber v. Sec'y of Health & Human Servs*., No. 09-458V, 2011 WL 839111 (Fed. Cl. Spec. Mstr. Feb. 14, 2011); *Cansler ex rel. Cansler v. Sec'y of Health & Human Servs*., No. 09-596V, 2011 WL 597791, at *1-3 (Fed. Cl. Spec. Mstr. Feb. 2, 2011). Moreover, a Florida statute provides that attorneys for personal representatives "shall be entitled to compensation payable from the estate assets."  Fla. Stat. Ann. §733.6171.  Accordingly, petitioner was ordered to provide the basis upon which the work performed by Shutts & Bowen, is compensable under the Vaccine Act.  Order, ECF No. 51.

On June 28, 2017, petitioner filed a response to the Court's Order.  ECF No. 52. Petitioner attached an affidavit from Charla Burchett, Esq., a partner at Shutts & Bowen. Petitioner asserted that establishment and administration of the estate was done as a requirement of the Act as well as respondent's stipulation for damages.  The Florida statute providing for the payment of estate attorneys was not addressed.

On July 12, 2017, respondent filed a reply to petitioner's response, citing three decisions from the Court of Federal Claims that declined to award fees attributable to probate matters under § 15(e)(1).  *See Mol v. Sec'y of Health & Human Servs.*, 50 Fed. Cl. 588, 591 (2001); *Lemon v. Sec'y of Health & Human Servs.*, 19 Cl. Ct. 621 (1990); *Siegfried v. Sec'y of Health & Human Servs.*, 19 Cl. Ct. 322 (1990).  Moreover, respondent noted that the statutory language in § 15(e)(1) has not been amended since those decisions were issued.  Finally, respondent pointed out that both petitioner's vaccine attorneys and her estate attorneys began to bill for estate related

tasks in July of 2014, six-months before the vaccine case was initiated and well before the stipulation was signed.  ECF No. 53.

## I. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1).  If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic.  *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013).  However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed.  § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008).  Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  That product is then adjusted upward or downward based on other specific findings.  *Id.*

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Id.* at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney."  *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).  There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate.  *Id.*  This is known as the *Davis County* exception.  *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (Fed. Cir. 2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).  For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience.  *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has issued a fee schedule that updates the *McCulloch* rates to account for inflation in subsequent years.[3]

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation."  *Avera*, 515 F.3d at 1348.  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  "Unreasonably duplicative or excessive billing"

---

[3] This fee schedule is posted on the court's website.  *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf [hereinafter *Hourly Rate Fee Schedule*].

includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g., McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Ultimately, special masters have substantial discretion in awarding fees and costs, and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen*, 102 Fed. Cl. at 729.

## II. Discussion

### A.    Vaccine Attorneys' Fees

Petitioner requests $45,090.30 in attorneys' fees. Pet. Ex. 20, ECF No. 48-1. The requested hourly forum rates, *see id.* at 20, are consistent with the rates previously found to be reasonable in cases involving petitioner's counsel. *See, e.g., Rausch v. Sec'y of Health & Human Servs.*, No. 16-438V, 2017 WL 1632527, at *1 (Fed. Cl. Spec. Mstr. Apr. 6, 2017); *Beckham v. Sec'y of Health & Human Servs.*, No. 15-940V, 2017 WL 1632508, at *1 (Fed. Cl. Spec. Mstr. Feb. 13, 2017). Moreover, the number of hours expended in this case by petitioner's counsel appear to be reasonable. Therefore, the undersigned awards the requested attorneys' fees.

### B.    Vaccine Attorneys' Costs

Petitioner requests a total amount of $8,032.97 in attorneys' costs. Pet. Ex. 21, ECF No. 48-2. The requested costs consist of the filing fee, shipping cost, and medical record fees. The costs also include the cost of appointing a representative to file the petition on behalf of the decedent and establishing the estate, which the estate attorneys billed to and were paid by

Maglio, Christopher & Toale, PA in the amount of $1,618.00.  The undersigned finds petitioner's requested costs to be reasonable.

## C.      Estate Attorneys' Fees and Costs

Petitioner also seeks $12,311.11 in attorneys' fees charged by Shutts & Bowen for estate administration.  *See* Pet. Ex. 22, ECF No. 48-3.  These fees and expenses are not compensable under the Act.

The Vaccine Act limits the amount of "compensation to cover petitioner's . . . costs" to those "incurred in any proceeding on [a Vaccine Act] petition."  § 15(e)(1).  In cases involving a minor or a decedent, such costs often include those incurred in establishing an estate or guardianship to receive and dispense the award.  These costs are generally compensable under the Vaccine Act if establishing the estate or guardianship is "an essential prerequisite condition" to obtaining an award that must "be fulfilled in order for [the] award to be made."  *Haber*, 2011 WL 839111, at *2.  In other words, the costs associated with fulfilling a condition to receiving an award that "is set by either court order or as an element of the agreed-upon settlement with respondent" are generally compensable under the Vaccine Act.  *Ceballos ex rel. Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910, at *20-22 (Fed. Cl. Spec. Mstr. Mar. 25, 2004); *see also Kenney v. Sec'y of Health & Human Servs.*, No. 09-0738V, 2012 WL 6013214, at *1 (Fed. Cl. Spec. Mstr. Oct. 24, 2012) (collecting cases awarding compensation for "fees and costs of creating a guardianship or conservatorship").[4]  However, costs incurred "without court or respondent involvement" are generally "not incurred 'on a petition' and thus are not compensable under the Program."  *Ceballos*, 2004 WL 784910, at *20; *see Mol*, 50 Fed. Cl. at 591 (rejecting a compensation theory under which all "'but for' expenses would have to be compensable including a wide variety of probate matters"); *Haber*, 2011 WL 839111, at *2 (noting that "compensation is unavailable for myriad legal implications unrelated to the vaccine petition" (emphasis removed)).

In this case, a portion of the costs in Part II.B above includes $1,618.00 in costs associated with establishing an estate and obtaining legal representative authority.  Pet. Ex. 21 at 2.  These costs are compensable, as these actions were required by the Vaccine Act prior to filing the petition.  Under the Act, petitions alleging that death resulted from a vaccination must be filed by the decedent's "legal representative."  § 11(b)(1)(A).  The Act defines "legal representative" as "a parent or an individual who qualifies as a legal guardian under State law." § 33(2).  And in cases like this one where respondent stipulates to an award amount, respondent requests proof that petitioner has been "duly authorized to serve as a legal representative."[5]  Stipulation, ECF No. 42, at 3.  Thus, the $1,618.00 in costs incurred by petitioner to obtain legal

---

[4] Some special masters have referred to this test as a "but for" test—i.e., whether, "but for" an order by the court or a demand by respondent, the cost would have been incurred by petitioner.  *See Ceballos*, 2004 WL 784910, at *20.

[5] Because obtaining legal representative authority is a prerequisite to filing a petition, respondent simply requests proof that petitioner possesses this authority before disbursing payment.  This request is unlike cases in which respondent requires that petitioner undertake additional action, such as establishing a guardianship, to receive compensation.

representative authority reflect actions required by the Act and are therefore compensable.  And as noted above, these costs were accounted for in the costs submitted by petitioner's counsel.

However, the additional $12,311.11 in attorneys' fees and expenses that were billed by Shutts & Bowen for estate "administration," *see* Pet. Ex. 22; Pet. Ex. 26, are not compensable under the Act.  These estate administration fees involve "a wide variety of probate matters" in collateral state court proceedings that are "unrelated to the vaccine petition" itself.  *Haber*, 2011 WL 839111, at *2.  None of the services rendered by Shutts & Bowen had anything to do with the proceedings in this court; instead, they relate to advising petitioner "in discharging her duties in accordance with applicable Florida law" and involve ordinary probate matters such as tax administration, property inventories, and claims by creditors.[6]  Pet. Ex. 26 at 2.  Because the fees associated with these services were incurred "without court or respondent involvement," they were not incurred as part of a "proceeding on [a Vaccine Act] petition" as the statute requires.  *Ceballos*, 2004 WL 784910, at *20-22 (quoting § 15(e)(1)).

Petitioner argues that these fees should be compensable because they would not have been incurred "but for" the "filing [of] a claim" under the Vaccine Act.[7]  ECF No. 52 at 4.  This assertion overlooks the "critical act" required for compensation—a determination by this court or by respondent that the costs are necessary to receive the award.  *Ceballos*, 2004 WL 784910, at *22.  That criterion distinguishes costs incurred for obtaining authorization as a personal representative, which is required under the Act, from those incurred for administering an estate, which is not.

This conclusion is bolstered by the practical difficulties that would accompany awarding attorneys' fees for estate administration.  Special masters are given discretion to award attorneys' fees precisely because of their "superior understanding of the litigation."  *Hall*, 640 F.3d at 1357 (quoting *Hensley*, 461 U.S. at 437); *see also Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 638 (2012) (noting that special masters should "draw upon [their] own experience with the Vaccine Program" in assessing attorneys' fees).  Special masters are thus "expected to examine a law firm's time sheets and root out 'hours that are excessive, redundant, or otherwise unnecessary' so that they may be 'excluded from an award.'"  *Davis*, 105 Fed. Cl. at 637-38 (quoting *Carrington ex rel. Carrington v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 319, 323 (2008)).  Performing this examination on estate attorneys' time sheets, however, would require a nuanced understanding of Florida probate law to determine the reasonableness of the various tasks that are billed.  Indeed, estate attorneys' fees are ordinarily awarded in Florida pursuant to a state statute, *see* Fla. Stat. Ann. § 733.6171, and in awarding such fees, Florida courts will "consider the nature of the services rendered and the necessity for their performance, together

---

[6] *See, e.g.*, Pet. Ex. 26 at 11 ("Review pending matters file to obtain status of probate; review assets to prepare for Inventory filing."); *id.* at 12 ("Prepare draft of letter to client regarding claim filed by Ocala Regional Medical Center."); *id.* at 18 ("Review, revise and execute letter to client with instructions for signing IRS SS4 Form and Statement Regarding Third Party Designee."); *id.* at 21 ("Payment of Invoice #31919 Auto Owners Insurance Co.").

[7] The accuracy of this statement is questionable.  Most of the tasks billed by petitioner's estate attorneys appear to relate to taxes and claims by the decedent's creditors.  *See* Pet. Ex. 26.  Petitioner has not offered any argument that these taxes and creditors would not exist but for the Vaccine Act claim.

with the reasonableness of the charges." *Glantz & Glantz, P.A. v. Chinchilla*, 17 So. 3d 711, 713 (Fla. Dist. Ct. App. 2009) (citation omitted). Such an evaluation by special masters would be especially difficult given that none of the work performed by the estate attorneys is ever "presented to the court at its behest and for its approval." *Thomas v. Sec'y of Health & Human Servs.*, No. 92-46V, 1997 WL 74664, at *3 (Fed. Cl. Spec. Mstr. Feb. 3, 1997).

Moreover, although the decisions of the Court of Federal Claims are not binding on special masters, *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998), those decisions are "due great respect." *Ceballos*, 2004 WL 784910, at *20. The Court of Federal Claims has previously "addressed the question of whether fees attributable to probate matters are compensable under [§ 15(e)(1)], and has answered the question in the negative" each time. *Mol*, 50 Fed. Cl. at 591; *see Lemon*, 19 Cl. Ct. at 623 (holding that "fees and expenses concerning the administration of [an] estate" are "disallowed because they were not incurred in any proceeding on the petition"); *Siegfried*, 19 Cl. Ct. at 325 (holding that the Vaccine Act "does not provide attorney fee awards to cover the myriad legal implications of establishing or administering an estate"). Nothing has changed in the statute in the years since those decisions were issued.

In sum, while costs incurred in obtaining personal representative authorization are generally compensable "costs incurred in any proceeding on [a Vaccine Act] petition," § 15(e)(1), attorneys' fees incurred for estate administration in collateral state court proceedings are not. A request for estate attorneys' fees is more appropriately directed to the state courts of Florida, which are better equipped to award such fees pursuant to applicable Florida law, which allows for such recovery from the estate.

### III. Total Award Summary

Based on the reasonableness of petitioner's request for attorneys' fees and costs for her vaccine attorney, the undersigned **GRANTS IN PART** petitioner's motion for attorneys' fees and costs. **Accordingly, the undersigned awards a total amount of $53,123.27,**[8] representing reimbursement for attorneys' fees and costs, **in the form of a check payable jointly to petitioner and petitioner's counsel, Alison Haskins, Esq.** The clerk of the court is directed to enter judgment in accordance with this decision.[9]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[8] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.